Shafeeq Sadiq
STATE BAR NO. 233049
Aldon L. Bolanos
STATE BAR NO. 233915
1755 WEST HAMMER LANE, SUITE 3
STOCKTON, CA 95209
(209) 957-5610
(209) 787-5129 FAX

ATTORNEYS FOR PLAINTIFF
William Marshall Correa



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM MARSHALL CORREA,

Plaintiffs,

v.

FIRESTONE COMPLETE AUTO CARE, SCOTT BOLLENGIER,

Defendants.

Case No. CV 13 3123

**COMPLAINT FOR DAMAGES**

*JURY TRIAL DEMANDED*

Plaintiff WILLIAM MARSHALL CORREA, alleges as follows in this his Complaint for Damages:

### PREFATORY ALLEGATIONS

1. Plaintiff WILLIAM MARSHALL CORREA, ("Plaintiff") is a resident of the State of California, County of San Joaquin, City of Stockton. Jurisdiction and Venue are proper because the case raises federal questions under Title VII of the Civil Rights Act of 1964.

2. Plaintiff has exhausted all required administrative remedies prior to bringing this suit.

3. Plaintiff is informed and believes, and thereon alleges that at all times, Defendant FIRESTONE COMPLETE AUTO CARE, was a business entity doing business in the State of California and Alameda County.

### GENERAL ALLEGATIONS

4. Defendant Scott Bollengier ("Bollengier") is a white male and is the store manager of Firestone Complete Auto Care in Fremont, California.

COMPLAINT

5. Plaintiff is a Latin male of African-American descent. He is married to Annette Marshall Correa, a widow. While he was alive, Ms. Correa's ex-husband was defendant Scott Bollengier's best friend.

6. In July or August 2012, Bollengier told Plaintiff's wife that he had a problem with her being married to Plaintiff because he is a black man.

7. On September 5, 2012, a negative comment was posted on the "Yelp" website quoting Bollinger as complaining that he had to deal with "these stupid a$$ Hindu customers."

8. On September 15, 2012, Plaintiff was hired by Firestone in retail sales. Throughout his employment, Plaintiff was never reprimanded or disciplined and his performance evaluations were positive.

9. In October 2012, defendant Bollengier delegated many aspects of his managerial duties to Plaintiff, all of which were not in Plaintiff's job description.

10. On or around December 15, 2012, Plaintiff was promoted from retail sales to manager of tire sales.

11. On or around December 21, 2012, a customer lodged a complaint with Firestone citing Mr. Bollengier's racism towards East Asians and as well as his condescending behavior.

12. During the scope of Plaintiff's employment, Defendant Bollengier hired Spencer Rodriguez for sales. Bollengier told Mr. Rodriguez in his interview that he needed to "watch out for the ragheads."

13. During the scope of Plaintiff's employment, Defendant Bollengier hired and trained Craig Barlow, a white male, for sales. Bollengier became very friendly with Barlow and began going out to lunch with him.

14. In January 2013, Plaintiff noticed that Barlow was selling free brake inspections to customers for $19.99. Plaintiff also discovered that Barlow was repairing cars at his home that were 100% covered by the Firestone warranty.

15. In January 2013, Plaintiff reported Barlow's overcharging and defrauding of the public to defendant Bollengier, who told Plaintiff that he did not see it as a problem.

16. On January 4, 2013, Plaintiff informed Defendant Bollengier that Plaintiff's wife's truck had

two damaged tires and two tires with low tread that presented a safety hazard. Bollingier created a work order for four new tires, which included a 35% employee discount. Despite the obvious safety hazard, Defendant Bollengier told Plaintiff not to install the tires until February 2013 since he felt it would affect his January 2013 month-end "sales numbers."

17. In Mid-January, Defendant Bollengier informed Plaintiff that he wanted to fire African-American service manager Anthony Lacy because he "wasn't performing properly." Lacy, a former store manager, has been employed by Firestone for over 19 years and was once awarded "service manager of the year." Instead of actually firing Lacy, Bollengier launched a plan to have Lacy transferred to the Milpitas store since that store had an upcoming retirement. Bollengier's plan was foiled when the expected retirement in Milpitas did not happen.

18. On January 23, 2013, Plaintiff decided he would no longer place his family's safety at risk and had four new tires installed on his wife's truck, per Bollengier's previously drafted and authorized work order. Plaintiff's wife's tires were paid for by her father's credit card with his permission.

19. On or around January 26, 2013, defendant Bollengier reviewed the work orders and discovered that Plaintiff's wife's tires had been installed.

20. On February 12, 2013, Plaintiff was suspended by defendant Bollengier for *not waiting* to install new tires on his wife's vehicle and for having the tires paid for by his wife's father.

21. On February 14, 2013, Plaintiff was fired.

22. After firing Plaintiff, defendant Bollengier transferred another African-American employee, Sean Jones, from the Fremont store.

## FIRST CAUSE OF ACTION

### *TERMINATION IN VIOLATION OF PUBLIC POLICY*

22. Plaintiff re-alleges each and every allegation set forth in paragraph 1 through 21 of plaintiff's complaint as though fully set forth herein.

23. Plaintiff was unfairly terminated by his employer merely for complaining to management about its practice of overcharging and defrauding customers, as well as his refusal to place the health and safety of his family and the general public at risk by not replacing his wife's tires. Plaintiff's

-3-
COMPLAINT

firing was also racially motivated by Defendant Bollengier's racism towards people of color.

24. Plaintiff's termination based upon the above was in violation of the law and public policy of federal and state law.

## SECOND CAUSES OF ACTION:

### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964

25. Plaintiff incorporates by reference paragraphs 1 through 21 herein.

26. Federal law prohibits discriminating against an individual in the terms and conditions of employment due to that individual's race.

27. Plaintiff is member of a protected class.

28. Defendant discriminated against plaintiff and retaliated against him by firing him because of his race.

29. As a proximate result of this discrimination and retaliation, Plaintiff has suffered damages in an amount according to proof and set forth below.

## THIRD CAUSE OF ACTION:

### Unlawful Retaliation Under Title VII of the Civil Rights Act of 1964

30. Plaintiff incorporates by reference paragraphs 1 through 21 as though fully set forth herein.

31. Plaintiff engaged in protected activity when he complained to management about its practice of overcharging and defrauding customers, as well as when he replaced his wife's tires for the safety of his family and the general public.

32. As a result of the protected activity, Defendant retaliated against and ultimately terminated Plaintiff from his employment.

33. As a proximate result of this retaliation, Plaintiff has suffered damages in an amount according to proof and set forth below.

## PRAYER FOR RELIEF

34. Plaintiff requests a money judgment in the amount equal to general and special damages sustained in an amount according to proof, including without limitation front pay and back pay.

35. Plaintiff further requests a money judgment in the amount equal to his attorneys' fees and costs, also in amount according to proof.

36. Plaintiff further seeks punitive and or exemplary damages.

37. Plaintiff seeks double, treble and other statutory damages.

38. Plaintiff seeks further relief as the Court may deem just.

DATED: July 2, 2013

*/s/ Shafeeq Sadiq*
Shafeeq Sadiq
Attorney for Plaintiff
William Marshall Correa